MYERS, J.,
for the Court.
¶ 1. On December 28, 2002, the personal representative of the Estate of Lawrence Spiegel (“Spiegel”), filed a complaint against Western Surety Company, Fidelity and Deposit Company of Maryland, Gayle Parker, Circuit Clerk of Harrison County, Mississippi, and Webb L. Lee, former Circuit Clerk of Harrison County, Mississippi, and Gail Nicholson in the Circuit Court of the First Judicial District of Harrison County. Western Surety Company and Fidelity Deposit Company were joined as defendants in the case because they were sureties for the circuit clerk and former circuit clerk on their official bonds. The complaint alleged that the circuit clerk failed to properly enroll a foreign judgment held by Spiegel and that this failure ultimately caused Spiegel to be unable to execute the judgment.
¶ 2. On October 31, 2003, the circuit court granted the appellees’ motion to dismiss, or, in the alternative, for judgment on the pleadings, finding that Spiegel’s action was barred by the statute of limitations. Spiegel filed a motion for reconsideration, which was denied on March 12, 2004. Also on March 12, 2004, the court entered an amended order, specifically finding that Spiegel’s action was time-barred because it accrued on or before June 9, 1997. A judgment of dismissal with prejudice was also entered on March 12, 2004. Gail Nicholson had been dismissed from the suit on December 22, 2003, pursuant to an agreed order of dismissal.
¶ 3. Aggrieved by the judgment of the circuit court, Spiegel now appeals, raising the following single issue:
DID THE CIRCUIT COURT ERR IN FINDING SPIEGEL’S ACTION TO BE BARRED BY THE STATUTE OF LIMITATIONS?
¶ 4. Finding no error, we affirm the judgment of the circuit court.
FACTS
¶ 5. On March 19, 1990, Lawrence Spie-gel was awarded a joint and several judgment against Fay Yeager and Lydia Ann Rayner by the United States District Court for New Jersey. The amount of the judgment was roughly $3,000,000. The Third Circuit Court of Appeals affirmed this judgment. On or about May 2, 1990, Gail Nicholson was hired by Spiegel to enroll the New Jersey judgment in Harrison County, Mississippi, the known residence of Lydia Ann Rayner. For reasons that are not entirely clear from the record, the judgment was not properly enrolled by the circuit clerk. On or about May 3, 1990, Nicholson also registered the New Jersey judgment in the United States District Court for the Southern District of Mississippi. Spiegel eventually became aware that his judgment did not appear on the judgment rolls of Harrison County, in spite of Nicholson’s delivering of the New Jersey judgment to the circuit clerk for enrollment. Because of this, on June 9, 1997, another attorney in Mississippi re-enrolled the judgment on behalf of Spiegel, and this time the judgment was actually enrolled by the clerk.
¶ 6. On April 29, 1999, Lawrence Spiegel departed this life, and on December 5, 2000, an estate was opened in Monmouth County, New Jersey for the purpose of administering Spiegel’s estate. A little over two years later, as noted above, on December 23, 2002, the personal representative of the estate (hereinafter “Spiegel”) filed the complaint, alleging that the circuit clerk caused him damage by failing to *861 enroll the judgment when first presented for enrollment on May 2,1990.
¶ 7. Previous to the filing of Spiegel’s complaint, on June 21, 2000, Rayner filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Mississippi. It was this bankruptcy proceeding that led to the decisions on September 30, 2002 and August 20, 2003, which Spiegel argues to be the dates upon which his action accrued. On September 30, 2002, the bankruptcy court held that Spiegel’s New Jersey judgment was unenforceable in Mississippi, and on August 20, 2003, the United States District Court affirmed the decision of the bankruptcy court. Because of this, Spiegel argues that he was unable to collect any of the judgment he held against Rayner. Several months later, as noted, Spiegel instituted the instant suit, claiming that the circuit clerk’s error destroyed his chances of collecting on the judgment against Rayner and that the circuit clerk should, therefore, have to pay him the value of the judgment for this error.
LEGAL ANALYSIS
DID THE CIRCUIT COURT ERR IN FINDING SPIEGEL’S ACTION TO BE BARRED BY THE STATUTE OF LIMITATIONS?
¶ 8. Spiegel actually states two separate issues in his brief; however, both of the issues he states turn upon this single issue regarding the circuit court’s finding on the statute of limitations. Because of this, we have combined the two issues stated by Spiegel into one, and we will discuss the issue accordingly.
¶ 9. Spiegel makes a number of arguments and sub-arguments, but the main thrust of Spiegel’s argument is that his cause of action did not accrue until either September 30, 2002 or August 20, 2003, because one of these two dates is when he actually suffered an actionable injury. He argues that this is so because he was not injured by the circuit clerk’s failure to enroll his foreign judgment until the bankruptcy court rendered its decision or when the district court affirmed the decision of the bankruptcy court. In other words, Spiegel argues that he suffered no actual loss until September 30, 2002 or August 20, 2003, and that any action he may have brought before those dates would have been premature (of course, an obvious problem with this argument is that his complaint was filed on December 23, 2002; thus, if his action did not accrue until August 20, 2003, his complaint was prematurely filed and his own argument would bear this out).
¶ 10. The appellees argue that Spiegel’s action accrued at the latest on June 9, 1997, because that is the latest date upon which Spiegel can be said to have discovered or known of the clerk’s error. Having discovered the error at least on this date (if not earlier), his cause of action based upon that error accrued on this date. Because of this, the appellees argue that Spiegel’s claim is time-barred under the applicable statute of limitations. According to the appellees, the applicable statute of limitations is the one year statute of limitations under the Mississippi Tort Claims Act (“MTCA”), Mississippi Code Annotated § 11-46-11 (Rev.2002). The appellees also argue that Spiegel did not comply with the statutory notice of claim requirements of the MTCA and that, therefore, Spiegel’s action was not only time-barred under the statute of limitations, but also procedurally barred under the MTCA. Miss.Code Ann. § 11-46-11.
¶ 11. The appellees finally argue that even if this action does not fall under the MTCA, then the action is still barred by the general three year statute of limita *862 tions under Mississippi Code Annotated § 15-1-49 (Rev.2003).
STANDARD OF REVIEW
¶ 12. We employ de novo review in analyzing challenges to a trial court’s rulings on issues of law, such as statute of limitations issues. Alexander v. Womack, 857 So.2d 59, 62 (¶ 10) (Miss.2003). We also employ de novo review in determining issues relating to the proper application of the MTCA. City of Jackson v. Brister, 838 So.2d 274, 278 (¶ 13) (Miss.2003).
DISCUSSION

Applicability of the Mississippi Tort Claims Act

¶ 13. The first argument we must discuss involves the applicability of the Mississippi Tort Claims Act. We note at the outset that the appellees are correct in arguing that this action properly should have been brought under the Mississippi Tort Claims Act, at least insofar as the action states a claim of negligence against the current and former circuit clerks. This is so because Spiegel’s complaint alleges that two of the named defendants are governmental officials (e.g., the circuit clerk and the former circuit clerk) who, acting in their official capacity, were negligent and/or failed to properly perform their duties. Miss.Code Ann. § 11-46-1 to § 11-46-23 (Rev.2002); Young v. Benson, 828 So.2d 821, 823 (¶7) (Miss.Ct.App.2002). The complaint also named the sureties of the circuit clerk and former circuit clerk as party defendants, but the inclusion of additional defendants does not change the fact that Spiegel’s complaint also seeks relief from the circuit clerk and former circuit clerk for failing to perform an official duty as circuit clerk. We find that the complaint seeks this relief from the circuit clerk and former circuit clerk because, inter alia, the complaint prays for a joint and several judgment against all named defendants (which includes the circuit clerk and former circuit clerk). Because of this, as to the claims of negligence against the current and former circuit clerks, Spiegel’s action had to have been brought under the provisions of the MTCA.
¶ 14. In this regard, the MTCA declares:
The remedy provided by this chapter against a governmental entity or its employee is exclusive of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity or its employee or the estate of the employee for the act or omission which gave rise to the claim or suit; and any claim made or suit filed against a governmental entity or its employee to recover damages for any injury for which immunity has been waived under this chapter shall be brought only under the provisions of this chapter, notwithstanding the provisions of any other law to the contrary.
Miss.Code Ann. § 11-46-7(1) (Rev.2002) (emphasis added). Thus, according to the MTCA, when bringing suit against a governmental official for actions taken in his or her official capacity, a plaintiff must comply with the provisions of the MTCA. Among the provisions of the MTCA relevant to this case and with which Spiegel was required to comply are the one year statute of limitations and the notice of claim requirements of Mississippi Code Annotated § 11-46-11.
¶ 15. Before discussing these requirements, however, we must pause to consider a sub-argument advanced by Spiegel regarding the applicability of the MTCA. Spiegel argues that the MTCA is inapplicable because the acts of negligence complained of occurred in May of 1990, *863 which was prior to July 1, 1993, the effective date of the MTCA. Miss.Code Ann. § 11-46-5 (Rev.2002). We find this argument to be plainly meritless. The relevant date for determining the applicability of the MTCA is the date of the accrual of the cause of action. Durr ex rel. Durr v. University Hospital, 773 So.2d 403, 404-05 (¶¶ 6-8) (Miss.Ct.App.2000). At all times, Spiegel has maintained that his cause of action accrued on September 30, 2002 or August 20, 2003, both dates falling well after the effective date of the act. Thus, Spiegel’s argument regarding the effective date of the MTCA is meritless.
¶ 16. Regarding the notice of claim requirement of § 11-46-11, it appears that Spiegel did not file a notice of claim until roughly nine months after he had already filed his complaint. This is because the notice of claim is dated September 25, 2003, and the complaint was filed on December 23, 2002. Mississippi Code Annotated § 11-46-11 requires that the notice of claim be delivered to the chief executive officer of the governmental entity against whom a claim is being made ninety days prior to the filing of a suit against the governmental entity. Spiegel clearly failed to comply with this requirement. We do note that the date of Spie-gel’s notice of claim is a little confusing at first glance. This is because, on the front page of the notice, the date listed is September 25, 2003; however, on all of the subsequent pages, the date listed is September 25, 2002. Upon closer inspection, however, it becomes apparent that the September 25, 2002 date listed on the notice must have been a typographical error. This is so because the notice references the bankruptcy court’s decision, which was not rendered until September 30, 2002. Therefore, this particular notice could not have been served on September 25, 2002, since it references something that happened on September 30, 2002 (five days later).
¶ 17. The record demonstrates that Spiegel did not comply with the notice of claim requirements of Mississippi Code Annotated § 11-46-11, and for that reason alone, his action against the circuit clerk and former circuit clerk could have been dismissed. Gale v. Thomas, 759 So.2d 1150, 1158 (¶ 33) (Miss.1999) (holding that “[t]he notice of claim requirement imposes a condition precedent to the right to maintain an action .... the timely filing of notice is a jurisdictional prerequisite.”). However, the circuit court ultimately dismissed Spiegel’s action as time-barred, finding the MTCA issues to be moot; in addition, Spiegel’s main arguments here center around the question of the accrual of his cause of action and the applicability of the statute of limitations. Thus, we will go on to discuss the accrual and statute of limitations issues, but we note here that Spiegel did indeed fail to comply with the notice of claim requirements of the MTCA as to his action against the circuit clerk and former circuit clerk.
¶ 18. Before speaking to the accrual of Spiegel’s action, however, we must discuss one more aspect of Spiegel’s argument on the nature of his claim. Spiegel has attempted to argue that his action was, in essence, a contract action against the sureties of the circuit clerk, not a direct negligence action against the circuit clerk. Because of this, he argues, the MTCA does not apply, because the MTCA has been held not to apply to contract actions. This was, in essence, the holding of City of Grenada v. Whitten Aviation, Inc., 755 So.2d 1208, 1213 (¶ 12) (Miss.Ct.App.1999). While the very recent case of City of Jackson v. Est. of Stewart ex rel. Womack, 2003-CA-01413-SCT, 1999-IA-01527-SCT (Aug. 9, 2005), 908 So.2d 703, 2005 WL 1870174, has overruled City of Grenada v. *864 Whitten Aviation, Inc. in part, the Est. of Stewart case did re-affirm the proposition that the MTCA does not apply to actions for breach of an express contract. Id. at (¶¶ 33-38). Thus, insofar as Spiegel’s complaint states an action against the sureties and/or the circuit clerk and former circuit clerk for breach of an express contract, the MTCA does not apply. In addition, Spie-gel’s claims against Nicholson, a private attorney, do not fall under the MTCA.
¶ 19. Ail of that is to say that we find Spiegel’s complaint to have alleged more than one cause of action against more than one defendant. In particular, Spiegel’s complaint alleges (1) a negligence claim against the circuit clerk and former circuit clerk for actions taken in their official capacity, (2) a contract claim on a public officials’ bond, brought against the sureties of the circuit clerk and former circuit clerk or a contract action against the circuit clerk and former circuit clerk for breach of an express contract, and (3) a negligence/malpractice claim against Nicholson, a private attorney. The provisions of the MTCA are applicable to the claims of negligence against the circuit clerk and the former circuit clerk, but the other claims are subject to the general provisions of our law covering such causes of action. Thus, we find that more than one statute of limitations may have been applicable to the separate, named defendants. Having said that, we must now move on to discuss the issue of when Spiegel’s action accrued, because, as we shall see, depending upon the date when action accrued, whether the statute of limitations is one year or three years will not change the outcome.

Accrual of Spiegel’s Action

¶ 20. On the issue of accrual, our supreme court has held, “A cause of action accrues only when it comes into existence as an enforceable claim; that is, when the right to sue becomes vested.” Owens-Illinois, Inc. v. Edwards, 573 So.2d 704, 706 (Miss.1990). Applying the idea of accrual to the question of when a statute of limitations begins to run, the Owens-Illinois court went on to declare, “The cause of action accrues and the limitations period begins to run when the plaintiff can reasonably be held to have knowledge of the injury....” Id. at 709. The Owens-Illinois court also held that an injury must occur before a tort is complete for accrual purposes. Id. at 707.
¶ 21. Spiegel seizes upon language from the Owens-Illinois case, arguing that his action did not accrue until he was actually injured and that he was not actually injured until the bankruptcy court held his judgment to be unenforceable. He argues that his suit would have been held to have been premature, had he brought the suit before the bankruptcy court ruled on the enforceability of the New Jersey judgment. Spiegel also argues that he could not have been injured on June 9, 1997, because at that time Rayner was in her second bankruptcy proceeding.
¶ 22. We disagree with Spiegel’s arguments on these points, and we will address each of them in turn. First, one of the two alternate accrual dates offered by Spiegel is later in time than the date of the filing of his complaint. Thus, his own argument is problematic, in that it argues, at least in the alternative, against the timeliness of the filing of his complaint (since he filed his action before August 20, 2003, then under his own argument here, his action was prematurely filed).
¶ 23. In addition, the record demonstrates that Spiegel actually discovered the failure of the circuit clerk to enroll the judgment, at the latest, on June 9, 1997. We declared “at the latest” in the previous sentence purposefully, because there is some indication in the record that Spiegel had knowledge or should reasonably have *865 had knowledge, through the exercise of due diligence, of the circuit clerk’s error some time before June 9, 1997. In any event, on June 9, 1997, the point at which there can be no doubt that Spiegel knew the circuit clerk failed to enroll the judgment in 1990, Spiegel had a potential cause of action against the clerk. Young v. Benson, 828 So.2d 821, 823 (¶ 8) (Miss.Ct.App.2002) (holding that a plaintiffs cause of action against the chancery clerk accrued at the time the clerk failed/neglected to perform an official duty allegedly owed to the plaintiff).
¶24. Yet, Spiegel argues that he did not suffer any actual injury until September 30, 2002 or August 20, 2003 (as many as thirteen years after the occurrence of the alleged act of negligence on the part of the appellees), and, because of this, Spiegel argues that there was no completed tort (and therefore no cause of action) until September 30, 2002 or August 20, 2003. In support of this argument, Spiegel cites to the New York case of Flushing National Bank v. State, 156 Misc.2d 979, 595 N.Y.S.2d 284, 286 (N.Y.Ct.Cl.1992). Spie-gel cites to this case as standing for the proposition that he was not injured by the “mere failure” of the clerk to record the judgment. Upon a closer reading of this ease, however, we find that it lends no support to Spiegel’s arguments, not merely because it is a New York case that does not have any binding authority in Mississippi, but also because the holding of the case actually undermines Spiegel’s position.
¶ 25. In the Flushing case, the judgment creditor brought suit against the responsible clerk for failing to properly record a judgment. Id. at 285. Among other things that the Flushing court held that go against Spiegel’s arguments in this case were: (1) that the action fell under New York’s tort claims act, (2) that New York (unlike Mississippi) does not adhere to the discovery rule for purposes of determining accrual, and (3) that the judgment creditor did not prevail, in part because he failed to “discover” the clerk’s failure until four years after its actual occurrence. Id. at 286-87. Specifically on the third point just stated, the Flushing court declared:
While claimant has a right to assume a public officer will properly perform an official function, the failure to properly docket a judgment is an easily ascertainable fact within a short time after the omission occurs. We cannot adopt a rule which in the absence of fraud, would toll the running of the statutory period until claimant discovered the error.
Id. at 286-87. Thus, the Flushing court noted the timing of when the injury was ascertainable, not for purposes of giving the creditor more time in which to bring his action (as Spiegel would have us do here); on the contrary, the purpose of the Flushing court’s reference to this timing of the injury issue was to constrict the time in which the creditor should have brought its action. Id.
¶ 26. Thus, we find Spiegel’s argument in this regard to be meritless. The most he has offered in support of his argument is an isolated statement, pulled out of context and offered to support a proposition inconsistent with its original context, from a New York case. But, even if the Flushing case stood for the proposition for which Spiegel cites it, the holding of our own court in Young would prevail over the New York court’s holding (which has no binding authority in this state). To restate, the Young case declared that a plaintiffs cause of action against the chancery clerk accrued at the time the clerk failed/neglected to perform an official duty allegedly owed to the plaintiff. Young, 828 So.2d at 823 (¶ 8). A strict application of *866 the Young holding to this case would place the accrual date sometime in May of 1990 when the clerk failed to properly record the judgment. We point out that we do not here find that the accrual date should necessarily be in May of 1990, and we do not here declare that the Young case is indistinguishable from the case sub judice. Rather, we simply note that Spiegel’s citation to the Flushing case lends little support to his arguments.
¶27. In addition to finding Spie-gel’s argument from New York case law to lack merit, we also note that Spiegel did suffer some actual injury on June 9, 1997, and Spiegel’s own arguments demonstrate this. If Spiegel had been diligent in attempting to collect on his judgment some time between presenting the judgment for enrollment on May 2, 1990, and Rayner’s first filing for bankruptcy on December 13, 1995, then Spiegel would have faced a solvent debtor. However, by June 9, 1997, the debtor had become insolvent (although the bankruptcy proceeding pending on June 9, 1997 ended a short time later on July 23,1997), and Spiegel is quick to point out that he could not have collected against an insolvent debtor in June of 1997. Therefore, we find that Spiegel was injured by the clerk’s failure at least in that respect (which Spiegel’s own argument suggests): the clerk’s failure to properly enroll the judgment prevented Spiegel from collecting against Rayner while Ray-ner was still solvent. We find this to be an injury that would have been complete, ascertainable and definite on or before June 9, 1997: the loss of the opportunity to collect against a solvent individual. In light of this, we find no merit in Spiegel’s arguments about there being no actual loss suffered until some twelve or thirteen years after his first attempt to enroll his judgment against Rayner.
¶ 28. Therefore, we find Spiegel’s argument on the timing of his injury (namely, that he suffered no injury from the circuit clerk’s omission until some twelve or thirteen years after the omission took place) to be without merit.
¶ 29. We also note that Spiegel’s arguments on accrual and injury centering around the decision of the bankruptcy court conveniently gloss over (or simply ignore) the timetable involved in this case as a whole. After his initial attempt to enroll the New Jersey judgment, Spiegel took no other apparent action for approximately seven years. He first attempted to enroll the judgment on May 2, 1990, but he apparently did not discover the circuit clerk’s error until possibly as many as seven years later, at which point, on June 9, 1997, he made his second attempt at enrolling the New Jersey judgment. What Spiegel was doing (or not doing, as the case may have been) during these seven years, we cannot say; however, it is certain that, had Spiegel made some diligent effort to enforce the judgment within a reasonable time after presenting it to the clerk for enrollment, then he would most certainly have discovered the circuit clerk’s error sooner. To borrow language from the Flushing case, the failure to properly enroll a judgment is an easily ascertainable fact within a short time after the omission occurs. Flushing, 595 N.Y.S.2d at 287.
¶ 30. Spiegel does point out that the Harrison County judge on the bench in 1990 recalled conducting a judgment debt- or examination of Mrs. Rayner, and Spie-gel also points out that the Chief Deputy Circuit Clerk of the county at the time opined that the enrolled judgment had been misplaced or misfiled. Beyond this, however, Spiegel can not demonstrate that he took any other steps to enforce the New Jersey judgment after conducting the *867 judgment debtor examination. Spiegel certainly has not made any showing to explain why, after conducting a judgment debtor’s examination, no other subsequent action was taken for roughly seven years.
¶ 31. From the record, we do not see anything to cause us to seriously doubt that the circuit clerk committed some kind of negligence or error in failing to properly enroll the judgment in May of 1990; however, from the record, we do not see anything to cause us to suppose that Spiegel diligently sought to enforce his judgment and see the circuit clerk’s error corrected in a timely fashion. Wayne General Hosp. v. Hayes, 868 So.2d 997, 1001 (¶ 16) (Miss.2004). Our review of the record leads us to conclude that the biggest reason why Spiegel was not finally precluded from collecting his 1990 judgment until 2002 was because Spiegel delayed in making any meaningful collection attempts until participating in a subsequent bankruptcy proceeding instituted by Rayner on June 21, 2000. We do not believe that a creditor should be allowed to postpone the date of his so called “actual” injury, and thereby toll the statute of limitations, by means of his own inaction.
¶ 32. In this regard, we note the merit-lessness of Spiegel’s argument that Ray-ner’s various filings for bankruptcy prevented his collection of the judgment. This argument does not square with the timetable reflected in the record. According to Spiegel’s complaint, the New Jersey judgment was first presented to the circuit clerk for enrollment on May 2, 1990, yet, also according to the complaint, the first bankruptcy proceeding involving Lydia or Donald Rayner was not filed until October 26, 1994, some four years after the first attempt to enroll the judgment. The memorandum opinion of District Judge Senter lists December 13,1995, as the date of the first bankruptcy filed by Rayner and notes that Rayner received a discharge on July 23, 1997. Thus, Spiegel had at least four years (and possibly five, depending upon whether we use the date listed in Spiegel’s complaint, October 26, 1994, or the date listed in Judge Senter’s opinion, December 13, 1995), beginning on May 2, 1990 to take action to collect the judgment against a solvent debtor, and any automatic stay issues from the Rayners’ bankruptcy proceedings would not have affected Spiegel until four or five years after he first attempted to enroll the judgment. Had Spiegel been timely and diligent in seeking to enforce his judgment, he would have taken some action during the four or five years in between the time of his first attempt to enroll the judgment and Ray-ner’s first filing for bankruptcy.
¶ 33. Very notably, the “actual injury” alleged by Spiegel to have taken place in 2002 or 2003 came about as a result of Spiegel’s finally making a meaningful attempt at collection. This involved Spie-gel’s finally trying to collect through the bankruptcy proceedings instituted in 2000. Spiegel attempted to make much of the fact that on June 9, 1997, when he concedes he discovered the clerk’s error, Ray-ner was in bankruptcy. Conveniently, however, Spiegel neglects to mention that Rayner’s bankruptcy pending on June 9, 1997, was concluded and a discharge thereon entered on July 23, 1997, a little over a month later. All of this is to say that the picture painted by Spiegel, depicting himself as bound and prevented from collecting his judgment for years on end due to the actions of others, does not square with the facts in the record.
¶ 34. Therefore, we are unpersuaded, to say the least, by Spiegel’s arguments (a) that he suffered no actual injury until twelve or thirteen years after the act of negligence by the clerk and (b) that Ray-ner’s various bankruptcy filings interfered *868 with his collection attempts. On the contrary, we find that Spiegel’s own inaction was a far greater interference than anything Rayner or any of the appellees did in this case. Spiegel had at least four (and possibly five) years to attempt to collect on the judgment from the date of the first attempt to enroll the judgment. During this entire four or five year period, Rayner was solvent. After four or five years of inactivity on June 9, 1997, when Spiegel finally discovered the clerk’s error, he found Rayner to be in bankruptcy; however, the bankruptcy pending at the time was concluded and a discharge issued a little over a month later. Another three years of inactivity on the part of Spiegel then ensued, until finally, in 2000, Spiegel tried to collect the judgment through Ray-ner’s subsequent bankruptcy, filed on June 21, 2000. Thus, our review of the record reveals as many as eight years of inactivity, during which time Spiegel made no attempt to collect on his judgment. Conclusion
¶ 35. In this case, we find that Spiegel simply failed to timely assert his rights and seek their enforcement; and in addition to all of this, Spiegel plainly failed to comply with the requirements of the MTCA. Id. at 1000-01 (¶¶ 14-18). To borrow language from District Judge Senter, “Spiegel had a full and fair opportunity to enforce his New Jersey judgment....” But, we find, he failed to take advantage of that opportunity, and the long delay between the act of negligence in this case and the final, judicial determination of the unenforceability of Spiegel’s judgment was ultimately caused by the inaction of Spie-gel, rather than the actions of Rayner or the appellees.
¶ 36. We find that the circuit court did not err in finding that Spiegel’s action accrued on June 9, 1997. Because of that, we can find no error in the circuit court’s decision to dismiss Spiegel’s action as time-barred. The circuit court’s failure to treat the claims against the circuit clerk and former circuit clerk as properly falling under the provisions of the MTCA was, at most, harmless error. This is because, having found Spiegel’s action to be clearly barred under the lengthier, three year statute of limitations, it follows, a fortiori, that his action would also clearly be barred under the shorter, one year statute of limitations under the MTCA. Thus, the circuit court’s application of the wrong statute of limitations to the circuit clerk and former circuit clerk as separate defendants was harmless error, because the result of the case would be the same whichever limitations period was applied.
¶ 37. Therefore, since Spiegel’s action was clearly time-barred under the three year general statute of limitations under Mississippi Code Annotated § 15-1-49, we affirm the judgment of the circuit court.
¶ 38. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., CHANDLER, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY AND GRIFFIS, J., NOT PARTICIPATING.