■ AGATHA AUGAT, Doing Busines as LAUREL MANOR HOME FOR ADULTS, et al., Appellants, v STATE OF NEW YORK, Respondent. [666 NYS2d 249] —Casey, J. Appeal from an order of the Court of Claims (McNamara, J.), entered July 15, 1996, which, inter alia, granted the State's motion to dismiss the claim.

Laurel Manor Home for Adults is a small adult care facility located in the Town of Clarkstown, Rockland County. After a series of inspections was conducted by the Department of Social Services (hereinafter Department), a report was issued on December 1, 1993 charging Laurel Manor with 55 violations of statutory and regulatory provisions. The issues on this appeal arise out of the Department's conduct in immediately removing claimant Robert Augat as the facility's administrator and banning his presence there upon a finding that he had physically abused a resident. On March 2, 1994 claimants filed a notice of intention to file a claim and, thereafter, a claim seeking damages for defamation, intentional or negligent infliction of emotional distress, and deprivation of certain statutory and constitutional rights. In its answer the State asserted four affirmative defenses, including failure to state a cause of action and failure to serve the notice of claim or the notice of intention to file a claim within 90 days of the time that the claim arose. The State thereafter moved to dismiss on these two grounds. Claimants cross-moved for, inter alia, permission to file a late notice of claim.

The record reveals that at a meeting with Department personnel on December 1, 1993, claimant Agatha Augat, the owner and operator of Laurel Manor, was informed of the allegations against Robert Augat and the corrective action to be taken. Agatha Augat received a copy of the report at the meeting and again on December 3, 1993 via certified mail. Although

Agatha Augat does not remember receiving the report at the meeting, she does not dispute that she is in possession of the report, which is clearly stamped "Hand Delivered", or that Department personnel informed her that Robert Augat's approval as administrator had been withdrawn.

Based on these facts, the Court of Claims concluded that the notice of intention was not timely filed as the causes of action accrued on December 1, 1993, when Agatha Augat was presented with the inspection report which rescinded her son's certification to act as administrator. In doing so the court rejected claimants' assertion that the State had not pleaded its timeliness issue with particularity as required by Court of Claims Act § 11 (c). With respect to claimants' cross motion for permission to file a late claim, the court found that it was without authority to grant permission with regard to the defamation cause of action inasmuch as the Statute of Limitations had expired (*see*, Court of Claims Act § 10 [6]). Permission was denied with respect to the remaining causes of action due to lack of merit and no excuse for the delay.

We initially find that the State adequately pleaded the timeliness defense with sufficient particularity to meet the requirement of Court of Claims Act § 11 (c) (*see, Flushing Natl. Bank v State of New York*, 210 AD2d 294, *lv denied* 86 NY2d 706; *Ramirez v State of New York*, 171 Misc 2d 677, 679). Turning to the merits of the State's motion, we recognize the general principle that a claim accrues for purposes of the Court of Claims Act when damages are reasonably ascertainable (*see, Inter-Power of N. Y. v State of New York*, 230 AD2d 405, 408; *White Plains Parking Auth. v State of New York*, 180 AD2d 729, 730). We find, as did the Court of Claims, that all of claimants' causes of action* accrued on December 1, 1993, when claimants first received notice of the charges against Robert Augat and his approval to act as administrator was immediately rescinded; therefore, their notice of intention was not timely filed.

The report is clear, and Agatha Augat was specifically made aware, that her son's approval to act as administrator was being withdrawn on December 1, 1993. On that date, claimants' damages, if any, could be reasonably ascertained. In an affidavit in support of claimants' cross motion, Robert Augat admitted that, although he was not in attendance at the December 1, 1993 meeting, his mother immediately informed him that he had to cease acting as the administrator and together, that

---

* Claimants do not dispute the conclusion that the notice of intention was untimely with respect to their defamation cause of action.

same evening, claimants picked his successor. The fact that it was later determined that the Department acted improperly in withdrawing Robert Augat's approval without a hearing does not change the accrual date. Furthermore, we reject claimants' contention that their constitutional claims could not have accrued until February 24, 1994 when the Department affirmatively denied Robert Augat a hearing. Nor do we find that any of claimants' causes of action were continuous in nature so as to extend the accrual period of those claims, as the wrongs were not "so interrelated that they could not be separated for purposes of applying time limitations" (*Mahoney v Temporary Commn. of Investigation*, 165 AD2d 233, 240).

Having so concluded, we next consider the propriety of the Court of Claims' denial of claimants' cross motion for permission to file a late notice of claim. Upon weighing the factors in Court of Claims Act § 10 (6) to be considered in determining such a motion, we find that denial of the cross motion was appropriate. Although the State was not substantially prejudiced by the short delay, claimants have failed to set forth a reasonable excuse therefor. Furthermore, their causes of action for intentional and negligent infliction of emotional distress have no merit. Where, as here, "the act complained of constituted official conduct, public policy prohibits the maintenance of a suit against the State for intentional infliction of emotional distress" (*Brown v State of New York*, 125 AD2d 750, 752, *lv dismissed* 70 NY2d 747). Even if such a claim exists here, claimants have not alleged that the State's conduct was " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency' " (*Murphy v American Home Prods. Corp.*, 58 NY2d 293, 303, quoting Restatement [Second] of Torts § 46, comment *d*; *see, Howell v New York Post Co.*, 81 NY2d 115, 122). In addition, claimants have failed to set forth any medical evidence of mental anguish (*see, Glendora v Walsh*, 227 AD2d 377, 377-378, *lv denied* 88 NY2d 812, *cert denied* 519 US 1122).

With regard to the causes of action claiming a violation of due process or freedom of association rights, we recognize that actions for money damages exist against the State for the actions of its employees based upon alleged violations of the State Constitution (*see, Brown v State of New York*, 89 NY2d 172). However, even if there exists a cognizable cause of action for these particular violations, an issue not specifically resolved in *Brown (supra)*, we find that each of claimants' constitutional tort allegations may be analogized to an existing common-law tort for which there are adequate alternate remedies. In these

circumstances, therefore, and given the court's broad discretion in deciding such motions (*see, Matter of Gavigan v State of New York,* 176 AD2d 1117, 1118), claimants' cross motion was properly denied.

Mikoll, J. P., Crew III, Yesawich Jr. and Spain, JJ., concur. Ordered that the order is affirmed, without costs.